**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br>v.<br>ERIK JOHNSON,<br>*Defendant*. | Crim. No. 01-538<br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant Erik Johnson's motion to reduce his sentence pursuant to the First Step Act (the "Act"). D.E. 242. The Government filed opposition, D.E. 253, to which Defendant replied, D.E. 255. The Court then ordered additional briefing, D.E. 256, which the parties submitted, D.E. 257, 258.

The Court previously found that Defendant was eligible for relief under the Act. D.E. 259. Because the Third Circuit issued relevant decisions after the parties submitted their initial briefing, the Court permitted the parties to submit additional information as to whether the Court should exercise its discretion under the Act and reduce Defendant's sentence. *Id.* at 6. Both Defendant, D.E. 260, and the Government, D.E. 261, filed submissions in response. Defendant then submitted additional information, D.E. 262, 263. The Court reviewed the parties' submissions and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). For the reasons that follow, the Court does not reduce Defendant's sentence.

## I. BACKGROUND

### A. The Underlying Offense

Johnson was one of the original leaders of the Third World Crips, a violent drug-trafficking gang that operated in the John W. Hyatt Court Housing Project ("Hyatt Court") in Newark, New Jersey. *United States v. Johnson*, 89 F. App'x 781, 783-84 (3d Cir. 2004). For close to a decade, the gang used violence to sell large quantities of heroin, crack, and other illicit drugs. As the Third Circuit explained: "Gang members shot, beat, and attacked residents with dogs." *United States v. Johnson*, 745 F. App'x 464, 464 (3d Cir. 2018). At times, the gang limited residents' access to their own apartments and required residents to wear gang-approved colors, retaliating against those who did not comply. PSR ¶¶ 27, 29, 56, 63, 77-78, 81.

Johnson was particularly vicious. Judge Wolin, the trial judge, found Johnson to be the most "dominant" of the gang members who used violence. Nov. 1, 2002 Sent. Tr. ("Sent. Tr.") at 12. For instance, when the gang suspected a woman of stealing narcotics, Johnson and other gang members "severely assaulted" her, PSR ¶ 79, which included holding her face against a hot radiator long enough to remove the pigment from that area of her face. *Johnson*, 89 F. App'x at 784. On another occasion, when a pregnant woman was thought to have stolen drugs, Johnson stripped her and then kicked and punched her. PSR ¶ 85. Johnson then sicced a pit bull on the woman, causing severe bites and injuries to her lower body. *Id.* Another time, in response to suspicions that a firearm had been stolen, Johnson pistol whipped a woman and slammed her head against a telephone booth. PSR ¶¶ 57-58. And on yet another occasion, a suspected informant entered Hyatt Court. Johnson ordered another gang member to shoot the "snitch" – in a location in which young children were playing basketball. PSR ¶¶ 72-76, 86-91. The victim was shot in the leg, and Johnson then punched him in the back of the head. PSR ¶¶ 72-76, 86-91, 112.

Following a jury trial in 2002, Johnson was convicted of a conspiracy to distribute, and possess with intent to distribute, more than one kilogram of heroin and more than five kilograms of cocaine base in violation of 21 U.S.C. § 846 (contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)). He was also found guilty of distribution of, and possession with intent to distribute, heroin in violation of 21 U.S.C. § 841(b)(1)(C). Because of a prior state drug conviction, his adjusted offense level under the United States Sentencing Guidelines was forty-five, which when combined with a criminal history category of IV, resulted in a Guidelines range of life imprisonment. He also faced a statutory mandatory minimum sentence of twenty years under 21 U.S.C. § 841(b)(1)(A). On November 1, 2002, Johnson was sentenced to life imprisonment on one count and 240 months on the other, which was run concurrent to the life sentence. Sent. Tr. at 13. The Third Circuit affirmed Johnson's conviction and sentence. *Johnson*, 89 F. App'x at 788. The Circuit later affirmed the denial of Johnson's motion pursuant to 28 U.S.C. § 2255. *Johnson v. United States*, 294 F. App'x 709 (3d Cir. 2008).

**B. Relevant Evidence after Sentencing**

During the first thirteen years of his incarceration, Johnson incurred nine disciplinary infractions. In July 2009, Johnson was disciplined for "possessing a dangerous weapon," specifically a five-and-one-half-inch sharpened piece of metal. D.E. 260-2 at 11. Then, in November 2013, Johnson was disciplined for orchestrating a "narcotics drug introduction scheme" using coded language. *Id.* at 1. His last disciplinary infractions were in 2014.

Johnson has also taken positive steps while incarcerated. He received his GED, *id.* at 18, his associate's degree, D.E. 263, Ex. A. He has completed numerous education courses covering a variety of topics, from traditional study (English, history, psychology) to behavioral (drug education and anger management). D.E. 260-2. at 13-17. Due to these constructive efforts,

Johnson has moved from high-security prisons to a medium-security institution. He also works as a suicide watch companion and GED tutor. Finally, a recreation specialist at FCI Ray Brook reports that Defendant is a very good worker, who also uses downtime to study and enrich himself. D.E. 264-1.

Johnson explains that when he was first incarcerated, he "was very upset, bitter, confused and upset on how a person can be found guilty and sentenced to life with out (sic) physical evidence of the 5 kilograms of crack cocaine & 1 kilogram of heroin." D.E. 260-1 at 1. He continues that it "[r]eally took many years to accept and come to grips that a person can really do a life sentence with out (sic) being caught with drugs and also be found guilty with out (sic) no (sic) drugs being shown to the jury." *Id.* Johnson explains that he is now forty-six, and he looks at life differently because he is now a grandfather. *Id.* at 3. He notes that when he was in his twenties, he thought that being a "gangster was a man." *Id.* He now regrets the time he has lost with his family and believes that he has rehabilitated himself. *Id.* at 3-4.

**C. Prior Sentence Reduction**

In 2017, following the passage of Amendment 782[1] to the Guidelines, Johnson moved for a sentence reduction. D.E. 224. As a result of the amendment, his Guidelines range changed from a mandatory range of life imprisonment to 360 months to life. Johnson sought a sentence of thirty years, arguing the factors under 18 U.S.C. § 3553(a) in support. *Id.* Defendant also noted that he had been incident free for over three years, participated in BOP programming, and had recently

[1] "In November 2014, Amendment 782 to the United States Sentencing Guidelines became effective. Amendment 782 reduced by 2 levels the base offense levels of various drug quantities." *United States v. Easter*, 975 F.3d 318, 320 (3d Cir. 2020) (citing U.S. Sentencing Guidelines Manual app. C, amend. 782 (U.S. Sentencing Comm'n 2014)).

started history and economics classes. D.E. 226. On August 18, 2017, Judge Linares granted the motion and reduced Johnson's sentence to 480 months. D.E. 227.

Johnson then made the current motion after the First Step Act was enacted.

## II. LEGAL STANDARD & ANALYSIS

Having previously found that Johnson is eligible under Section 404 of the First Step Act of 2018, D.E. 259, the Court must next decide whether to exercise its discretion and grant him a reduced sentence. The Third Circuit has spoken to a court's duty in this regard. In *United States v. Easter*, 975 F.3d 318, 323, 326 (3d Cir. 2020), the Circuit ruled that when deciding a motion pursuant to the First Step Act, a district court must consider any applicable factors under 18 U.S.C. § 3553(a). The *Easter* court added that when conducting its analysis, the district judge should also consider any relevant "post-sentencing developments[.]" *Id.* at 327. The court in *Easter*, however, also indicated that a defendant is not "entitled to a plenary resentencing hearing at which he would be present." *Id.* at 326.

Here, the nature and circumstances of the offense strongly countenance against granting Johnson's motion. In addition to the long-running drug operation of which Johnson was convicted, the Court cannot overlook the atrocious violence that Johnson engaged in during the conspiracy. He was involved in holding a woman's face against a hot radiator causing her face to lose pigment in that area. He stripped a pregnant woman, beat her, and then caused a dog to attack her. He slammed another woman's head off of a telephone booth. Johnson caused a suspected informant to be shot (with small children in the area) and then beat him. This unvarnished brutality strongly weighs against granting the motion.

In addition, the need to avoid unwarranted sentencing disparities also militates against granting Defendant's motion. He was convicted of a heroin conspiracy that, standing alone, would

subject him to the same Guidelines' range. And the jury also found Johnson's conspiracy involved more than five kilograms of crack cocaine. The Court found that Johnson was eligible under the First Step Act because eligibility was based on the statute of conviction rather than the offense conduct. D.E. 259 at 4 (citing *United States v. Jackson*, 964 F.3d 197, 206, 207 (3d Cir. 2020)). Nevertheless, the Court can consider Johnson's actual conduct in deciding whether to exercise its discretion, and the actual amount of crack cocaine would not result in a change to Johnson's Guidelines.

As to Johnson's personal history and characteristics, there are facts that cut both ways. In Johnson's favor, he obtained his GED and his associate's degree, he has taken numerous classes and programs offered by the Bureau of Prisons, and he works in positions that contribute to the welfare of the institution. He has also remained discipline free for about eight years.

On the other hand, his disciplinary infractions continued until he was about thirty-nine and covered a span of approximately twelve years. Such improper behavior as Johnson closed in on age forty is inexcusable. Indeed, in 2013, Johnson was disciplined for being involved in a scheme to bring drugs into the prison. And he was also disciplined for having a dangerous weapon. Thus, while Johnson's more recent behavior supports his motion, his many years of improper conduct undercut his position.

Notably, Johnson attempts to explain his bad behavior for over twelve years in prison by explaining that he was "very bitter" and "confused" based on a fundamental misunderstanding of admissible evidence in a criminal case. In other words, Johnson was not remorseful or repentant for his conduct. Instead, his anger was fueled over a misconception of the evidence necessary to convict him. He certainly has expressed no remorse for the persons that he beat and hurt. Instead, the only person he expresses remorse for is himself. The Court is not convinced that such an

attitude is compatible with his claimed rehabilitation.

## III. CONCLUSION

For the foregoing reasons, and for good cause shown,

It is on this 12th day of January 2022 hereby

**ORDERED** that Johnson's motion for a reduction of his sentence pursuant to the First Step Act, D.E. 242., is **GRANTED in part and DENIED in part**. As previously decided, the Court finds that Johnson is eligible for relief under the First Step Act, D.E. 259; and it is further

**ORDERED** that Johnson's motion for a reduced sentence under the First Step Act is **DENIED**.

John Michael Vazquez, U.S.D.J.